**A.D. PERRY, Plaintiff–Appellant,**

v.

**Wallace SHARBER,**
**Defendant–Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 29, 1990.

Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

John W. Rollins, Gilliam, Rollins & Thormehlen, Manchester, for plaintiff-appellant.

R. Steven Waldron, Terry A. Fann, Waldron & Fann, Murfreesboro, for defendant-appellee.

---

## OPINION

CANTRELL, Judge.

In this action for damages for malicious prosecution the trial court granted the defendant's motion for summary judgment after finding insufficient evidence of malice. The court also concluded that the grand jury's failure to indict the defendant (plaintiff here) in the underlying action was not technically a termination in favor of that party. The pertinent facts are set out in the transcript from the trial court, some of which are in dispute.

On September 12, 1984, the plaintiff, A.D. Perry telephoned Raymond Busey regarding some horses that belonged to the defendant, Wallace Sharber. Mr. Busey was an associate of Sharber's and Perry informed Busey that the horses had escaped from the defendant's property onto some adjoining land which was being occupied by Perry. Perry told Busey that he had loaded up a mare and a colt and hauled them off to Manchester, Tennessee, where he would hold them until Sharber paid for feed and other damages the horses had done to Perry's property. Busey then informed Sharber of the situation. Prior to removing the horses, Perry contacted the Cannon County Sheriff's office and notified them of his intention to remove the animals from his property for safe keeping until the owners could be identified and his property repaired.

The next day the defendant called his brother, Leon Sharber, who is an attorney and the owner of the land the defendant was occupying, and advised him of the content of the conversation between Busey and Perry. Leon Sharber contacted Perry about the horses, but the contents of their conversation are in dispute. In his affidavit, Leon Sharber claims he informed Perry that he would come over and drive the horses back through the fence they had broken and repair all damage to Perry's

satisfaction, and that Perry stated he would make no promises to return the horses but would hold them and consider releasing them only after the damage was satisfactorily repaired. Perry contends that Leon Sharber never agreed or offered to remove the horses and repair the property, and that he informed Sharber that he would discuss returning the horses only when the damage was repaired.

The defendant subsequently met with William Whitesell, Jr., Assistant District Attorney General for Cannon County. The defendant claims that he related all material facts to Mr. Whitesell at their meeting. General Whitesell submitted an affidavit in support of the defendant's motion for summary judgment in which he stated that Sharber asked what criminal charges could be brought against Perry. That affidavit reveals that a charge of larceny was discussed, but based upon the facts and circumstances given, General Whitesell advised Sharber that in his opinion the appropriate charge would be malicious secretion of the property of another. General Whitesell's affidavit concludes that such advice was based upon what he perceived as Perry's attempt to deprive Sharber of his horses and an apparent unwillingness to put Leon Sharber in touch with Perry's attorney.[1] Sharber proceeded to file an affidavit and request for the issuance of a criminal warrant in the General Sessions Court of Cannon County, Tennessee.

Perry was subsequently arrested and charged with violating Tenn.Code Ann. § 39-3-1306, which provides:

Destroying, injuring, or secreting property or papers of another.—It is declared to be a misdemeanor to maliciously destroy, injure, or secrete any goods, chattels, or valuable papers of another.

A preliminary hearing was held on October 6, 1984, at which time probable cause

---

1. Leon Sharber's affidavit states that Perry informed him that he had been in contact with an attorney who advised Perry that he could haul off the horses and sell them if he wanted to, and that the owner of the horses could do nothing about it. Leon Sharber further claims that he asked Perry for the name of the attorney, or to have that attorney call him, but Perry refused to comply. Perry contends there was never any request by Leon Sharber to identify Perry's attorney, and that he informed Leon Sharber that he had contacted the Cannon County Sheriff's Office prior to removing the animals. These disputed facts are not relevant to our decision.

was found to exist and the case was bound over to the Cannon County Grand Jury. After properly waiving all rights to immunity from prosecution for perjury, Perry appeared before the grand jury and testified in his own behalf. The grand jurors returned a no-true bill.

Perry filed the present lawsuit on August 8, 1985 in the Circuit Court of Cannon County, charging the defendant with malicious prosecution. The defendant raised several affirmative defenses in his answer, including good faith reliance on the advice of counsel, and the existence of probable cause for issuance of the criminal warrant. The defendant subsequently moved for, and was granted a summary judgment based on lack of malice, and the trial court's perception that the grand jury's failure to indict was not technically a termination in favor of the plaintiff, such a termination being a necessary element of the charge of malicious prosecution. We now reverse.

Malicious prosecution, or the malicious use of process, is the employment of legal process for its ostensible purpose, but without probable cause. *Donaldson v. Donaldson*, 557 S.W.2d 60 (Tenn.1977). To make out a claim for malicious prosecution, the plaintiff must show that the defendant, with malice, initiated legal proceedings against him without probable cause, and that those proceedings terminated in his favor. *Id.* at 62.

■ The first issue presented for review is whether the original proceeding against Perry for malicious secretion of the property of another was terminated in his favor. In ruling on Sharber's motion for summary judgment, the trial court concluded that the mere fact that the grand jury declined to indict, after a court had found probable cause at the preliminary hearing, was not equivalent to a finding of not guilty and was not technically a termination in favor of the plaintiff. We disagree.

In *Tennessee Valley Iron & R.R. Co. v. Greeson*, 1 C.C.A. (Higgins) 369 (1910), the court determined that the failure of the grand jury to indict and the subsequent discharge of the accused is a sufficient termination of the criminal prosecution to support an action for malicious prosecution. The court indicated the same result would follow even in the absence of any formal order of discharge. *Id.* at 389. Thus, when the grand jury returned a no-true bill and chose not to indict Perry for the charges Sharber had filed, the proceeding was terminated in Perry's favor for the purpose of the present action.

■ In the second issue raised on appeal, the plaintiff contends that the trial court erred in finding insufficient evidence of malice to support a judgment for malicious prosecution. Malice may be inferred from the absence of probable cause, or from want of reasonable grounds for prosecution as the circumstances appeared to the prosecutor (Sharber) or as they would have appeared to a person of ordinary circumspection and diligence. *Peoples Protective Life Ins. Co. v. Neuhoff,* 56 Tenn.App. 346, 407 S.W.2d 190 (1966). If Perry can show Sharber acted without probable cause, he will have established sufficient malice to prevail against the motion for summary judgment.

A valuable, working definition of probable cause for malicious prosecution purposes was stated by our Supreme Court in *Lewis v. Williams,* 618 S.W.2d 299 (1981), and reiterated in *Logan v. Kuhn's Big K Corp.,* 676 S.W.2d 948 (Tenn.1984):

> (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; *and* (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. *The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances.* (emphasis added)

The question of whether probable cause exists in a malicious prosecution action is a mixed question of law and fact. *Logan,* 676 S.W.2d at 952. Whether the circumstances alleged to show probable cause are true is a question of fact for the jury. Whether those facts found to be true by

the jury constitute probable cause is a question of law for the trial court. *Id.* In the instant case, Perry alleges that he was merely holding Sharber's horses as collateral for the repair of his property. Leon Sharber, the defendant's brother, stated in his affidavit that Perry would make no promises to return the animals but would hold them and consider releasing them only after the damage was repaired to his satisfaction. These questions go to the defendant's probable cause to believe Perry was guilty of the crime charged. As such, their truth or existence are questions of fact for the jury to decide.

Viewing these facts, as we must, in the light most favorable to the plaintiff, we conclude that the defendant's horses were not taken or secreted maliciously. In *Hampton v. State*, 78 Tenn. 639 (1882), the court held that where the accused kept a wagon and a mule under lock and key under the erroneous belief that the property could be held for repayment of a debt, the property was being held under some color of right and, as such, was not secreted. The court said the statute was intended to punish wanton and malicious conduct where the primary motive is to do injury. Since Leon Sharber, an attorney, contacted Perry on his brother's behalf, we must assume that he relayed the contents of their conversation to the defendant. This would have put the defendant on notice that the horses were not being maliciously secreted, but rather, being held for "ransom" until the plaintiff's property was repaired. The statements in Leon Sharber's affidavit concerning the conditions under which Perry would "consider" returning the animals may show that Perry had an erroneous idea of his legal rights, but do not establish an intent to maliciously secret or permanently deprive the defendant of his property. It follows that such notice of Perry's state of mind would not lead a reasonable, ordinarily prudent person to believe Perry was guilty of malicious secretion of the property of another. This should have led the defendant to "make the investigation an ordinarily prudent person would have made in the circumstances," *Logan v. Kuhn's Big K Corp.*, 676 S.W.2d

948, prior to having a criminal warrant issued. Obviously, what was said in the various conversations makes a genuine issue of material fact which should be decided by a jury.

With respect to the defense of advice of counsel, it is true that where such advice has been honestly sought on all the material facts ascertainable by the exercise of due diligence, and a prosecution is commenced pursuant to such advice, the prosecutor is entitled as a matter of law to immunity from damages for malicious prosecution. *Peoples Protective Life Ins. Co. v. Neuhoff*, 56 Tenn.App. 346, 407 S.W.2d 190 (1966); *Cooper v. Flemming*, 114 Tenn. 40, 84 S.W. 801 (1904). And a District Attorney General is counsel whose advice can constitute a defense to an action for malicious prosecution where it is based upon a full and honest presentation of the material, ascertainable facts. *Id.*

But when we read the affidavit of General Whitesell in the light most favorable to Perry, it is not at all clear that his advice to the defendant was based upon a full and honest presentation of all material, ascertainable facts. His affidavit states that he was told by Wallace Sharber that Perry was refusing to return the horses, and that he discussed the charge of larceny with the defendant. The crime of larceny involves the intentional taking and carrying away of the personal property of another with the intent to permanently deprive. As stated earlier, Leon Sharber's affidavit mentions the conditions under which Perry would return the horses. Had General Whitesell been informed that Perry was willing to return the horses on the happening of certain conditions, it is unlikely that he would have discussed the charge of larceny with the defendant. Moreover, General Whitesell states that his advice to the defendant was based upon what he "perceived as Mr. Perry's attempt to *deprive the Sharbers of their horses.*" (emphasis added). The affidavits of both Leon Sharber and Raymond Busey do not indicate an intent to deprive the Sharber's of their horses. They only speak of the conditions under which Perry would consider the return of the animals.

The defense of advice of counsel also requires the disclosure of all *ascertainable* facts. Since the defendant did not take all the steps that a reasonably prudent person would to ascertain all the material facts, this defense is not available to rebut any proof of malice or want of probable cause.

It is well established that the summary judgment procedure was designed to provide a quick, inexpensive means of concluding a case when there is no genuine dispute regarding the material facts. But Rule 56 proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues, and they are not designed to force a party to try his case on affidavits with no opportunity to cross-examine witnesses. *Bowman v. Henard*, 547 S.W.2d 527 (Tenn.1977). All evidence must be viewed in the light most favorable to the opponent of the motion for summary judgment, including the benefit of every reasonable inference that can be drawn therefrom. *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213 (Tenn.1983).

Any dispute over a material fact will render summary judgment improper. Reading the transcript in a light most favorable to Perry, we find disputes over the material facts which go to the issue of the defendant's malice and lack of probable cause. These disputes must be resolved by a jury and it was error for the trial court to grant the defendant's motion for summary judgment.

The judgment of the court below is reversed and the cause is remanded to the Circuit Court of Cannon County for further proceedings consistent with this opinion. Costs are taxed to the appellee.

TODD, P.J., and LEWIS, J., concur.